WILLIAM FIFIELD *v.* GUY L. WOOSTER, WILLIAM B. COLBURN AND JOHN B. BEAMAN.

If an officer, having a writ of attachment, take possession of the property of the debtor on Saturday evening after sunset, with a view to the immediate operation of the writ upon the property as an original attachment, he acquires no lien thereby upon the property, and the court will not give effect to it as an attachment made at the earliest hour on the next Monday morning, at which an attachment could lawfully be made, although the officer remain in possession of the property until after that hour.

The statute, which prohibits the service of process between the setting of the sun on Saturday and twelve o'clock on Sunday night, refers to the commencement of the service; and if the service be begun before sunset on Saturday evening, it may well be completed afterwards, on the same evening.

In this case the officer attached goods on Thursday, but the attachment was, by the agreement of the parties to the process, relinquished on Friday evening. The parties, however, on Saturday morning, agreed to abandon their relinquishment of the attachment, and to re-instate the officer in possession of the property under the attachment previously made by him; and for this purpose the possession of the goods was delivered by the debtor to the attorney, who had superintended the business for the creditor, as a delivery to the officer, and the attorney continued in possession until the evening of the same day, after sunset, when he delivered the possession to the officer. And it was held, that it was competent for the parties to relinquish their agreement to abandon the attachment, so far, at least, as regarded their own rights and liabilities under such agreement, and that the possession of the officer should be considered as having commenced with the possession of the attorney for him;—but that it was not necessary to connect the possession of the attorney with that of the officer, in order to sustain the attachment, for the reason, that the possession, taken by the officer on Saturday evening, would be considered, under the circumstances, as a resumption of his previous possession under the attachment, and not as an original attachment commenced at that time.

TRESPASS for taking personal property. Plea, the general issue, with notice of special matter of defence, and trial by jury, September Term, 1847,—HALL, J., presiding.

On trial the plaintiff gave in evidence a writ of attachment in favor of Isaac McDaniels against Mark H. Wooster, dated July 17, 1845, returnable to Rutland county court, September Term, 1845, and the return of the plaintiff thereon, as constable, showing an at-

tachment by him of the property described in the declaration in this suit; also the record of a judgment rendered in said suit September Term, 1845, and an execution issued thereon, dated September 27, 1845, received by the plaintiff, as constable, October 13, 1845, and returned December 12, 1845. It was conceded, that the plaintiff, during all this time, was constable of Poultney.

The plaintiff introduced evidence tending to prove, that Ezra Andrews and S. P. Hooker were sureties for Mark H. Wooster on the note upon which the above mentioned suit was brought, and that that suit was brought at the request and by the direction of Andrews, for the benefit of the sureties; that the plaintiff, as constable, received the writ in the said suit on the seventeenth of July, 1845, which was on Thursday, and, on the same day, by virtue thereof, attached and took possession of the goods described in the declaration, and retained possession of the same until about sunset on the eighteenth of July, 1845, and in the mean time made an inventory of a part of the goods; that about sunset of the eighteenth of July Mark H. Wooster came to the store, and brought directions in writing from Andrews for a discharge of the property from the attachment, and for a discontinuance of the suit,—upon which the keys of the store, in which the property then was, were delivered to Wooster, with the assent of the attorney who brought the suit, and the attorney and plaintiff left the store and property in Wooster's possession; that on the morning of the nineteenth of July, 1845, Wooster and Hooker called upon the attorney, before the store had been opened by Wooster, and Wooster said, that Hooker was dissatisfied with the release of the goods, and that he, Wooster, did not wish the suit stopped, unless all were satisfied with it, and that he had called to re-deliver the keys of the store to the attorney, and wished, by so doing, to restore the goods and the attachment of them to the same situation they were in before they were released the night before, and wished to have the suit and attachment go on, the same as though there had been no release, and that he wished the attorney to take the keys, for the plaintiff, and restore the plaintiff to the possession of the goods for the benfit of Andrews and Hooker, and that he did then deliver the keys to the attorney for the plaintiff, and to be delivered to him; that the keys remained in the possession of the attorney for an hour, or two, when Wooster re-possessed himself

of them, without the consent and against the will of the attorney, and they were returned to the attorney by Hooker within fifteen minutes; that Hooker then went to Pawlet, where Andrews resided, and at night returned with another writing from Andrews, countermanding the former, and stating, that the attachment was not to be surrendered; and that after sunset of the same day, being Saturday, the plaintiff received the keys from the attorney and went into the store and thoroughly fastened all the doors and windows of the same, and retained the keys in his possession.

The plaintiff also introduced evidence tending to prove, that Guy L. Wooster, one of the defendants, previous to the alleged trespass by the defendants, was fully informed by the said attorney of what had been done by Mark H. Wooster and the other persons interested in the attachment; that the store and goods remained in the situation above described, until some time after midnight on Sunday night, July 20, 1845; that about three o'clock in the morning of Monday, the twenty first of July, the defendants were in the store and removing the goods,—having gained access thereto by forcing open an outer and inner door leading into the store; and that the plaintiff retained in his possession the writ in favor of McDaniels against Wooster from July 17, 1845, until he returned it to the county court.

The defendants gave in evidence a writ of attachment in favor of the defendant Guy L. Wooster against Mark H. Wooster, dated July 18, 1845, and the return of the defendant Colburn thereon, as deputy sheriff, purporting that he had attached thereon the same goods claimed by the plaintiff; also the record of a judgment rendered in said suit by Rutland county court, September Term, 1845, and an execution, issued upon said judgment September 27, 1845, which was received by Colburn, as deputy sheriff, October 3, 1845, and the said Colburn's return thereon. It was conceded, that Colburn, during all this time, was a legal deputy sheriff.

Upon this testimony the county court directed the jury to return a verdict for the defendants. Exceptions by plaintiff.

*M. H. Smith* and *C. Linsley* for plaintiff.

1. The case shows a valid attachment and possession of the goods, by the plaintiff, on the seventeenth of July, 1845. The

28

plaintiff claims, that the release of the goods on the eighteenth of
July, having been effected under a misapprehension of all the par-
ties to it, and followed by a perfect restitution of all matters to the
same situation they were in previous to the release, with the assent
of all the parties to the release, and of all persons then interested in
the goods, does not discharge the goods from the lien created by the
attachment. *Colton* v. *Camp,* 1 Wend. 365. If a debtor submit
to process, the formalities of a seizure, whether of the person, or of
property, are unnecessary, as against him. *Lyon* v. *Rood,* 12 Vt.
233. *Maxfield* v. *Scott,* 17 Vt. 634. The surrender of the keys to
the attorney, and giving him possession of the store and goods,
under the attachment, to be delivered to the plaintiff, was equiva-
lent to a surrender to the officer and possession by him. The
officer might adopt the acts of the attorney and make them his own.
*Newton* v. *Adams,* 4 Vt. 437.

2. But if the proceedings previous to the surrender upon the
nineteenth of July did not amount to a perfect attachment of the
goods, they were at least the commencement of an attachment,
which might be completed by possession after sunset on Saturday
evening. *Pearson* v. *French,* 9 Vt. 349.

3. The possession of the store and goods, taken by the plaintiff
on Saturday evening, was sufficient, by operation of law, to consti-
tute a valid attachment of them at the earliest moment when an at-
tachment could by law be made. 9 Vt. 349. *Turner* v. *Austin,*
16 Mass. 181. 17 Johns. 116. The law does not require any
unnecessary ceremony to constitute an attachment. If the officer
have a sufficient writ, and be in possession of property, and have
the power of seizure, this is an attachment. *Train* v. *Wellington,*
12 Mass. 495. *Denny* v. *Warren,* 16 Ib. 420. *Gordon* v. *Jenney,*
Ib. 465. *Hemminway* v. *Wheeler,* 14 Pick. 408. *Merrill* v. *Anger,*
8 Ib. 397. 12 Vt. 233. *Gold* v. *Bissell,* 1 Wend. 210. *Stewart*
v. *Martin,* 16 Vt. 397.

4. The surrender of the possession of the store and goods by
the debtor to the plaintiff, with the concurrence of the creditors, to
be held by him as security for the creditors, for whom he acted, or
that they might at a convenient time be attached at their suit, and
the acceptance of the trust by the plaintiff, constituted him bailee
of the goods; and, as such, the possession of the keys was a suffi-

Fifield *v.* Wooster et al.

cient possession of the goods to entitle the plaintiff to hold them against subsequent attaching creditors, having notice of the bailment.

*J. B. Beaman* and *S. H. Hodges* for defendants.

The case shows, that the attachment in the suit in favor of McDaniels against Wooster, made by the plaintiff on the 17th of July, 1845, was dissolved, the suit discontinued, and the property restored to the owner, Wooster. No subsequent attachment was made, or attempted to be made, until after the setting of the sun on Saturday, the 19th of July. The suit was commenced and controlled by Andrews, and by him discontinued; and consequently the attachment could not have been revived *de novo,* except by his direction, and an actual service of the writ by the officer; but, instead of that, whatever was done before sunset on Saturday evening was done without the knowledge or consent of Andrews, and without the intervention of the plaintiff, or any other officer. The statute,—Rev. St. c. 28, § 39,—makes null and void in every respect any service of the writ, that might have been made after the setting of the sun on Saturday, the 19th of July. 6 Bac. Ab. 172. *Haggerty* v. *Wilber,* 16 Johns. 287. *Lyon* v. *Rood,* 12 Vt. 233. 2 Vt. 120. 5 Mass. 157, 271. 4 Pick. 395. 11 Pick. 341, 519. *Burroughs* v. *Wright,* 19 Vt. 510. *Loveridge* v. *Plaistow,* 2 H. Bl. 29. *Howe* v. *Starkweather,* 17 Mass. 240. 1 Atk. 152. *Birch* v. *Prodger,* 4 B. & P. 135. *Wells* v. *Gurney,* 8 B. & C. 769, [15 E. C. L. 336.]

The opinion of the court was delivered by

HALL, J. By statute,—Rev. St. c. 28, sec. 39,—the service of a writ, such as that which the plaintiff had in his hands, between the setting of the sun on Saturday and twelve o'clock on Sunday night, is declared to be " null and void in every respect."

If the service of the plaintiff's writ is to be considered as having been made on Saturday evening, when the plaintiff received the key of the store from the attorney, it cannot be pretended, that he acquired any lien upon the property. It has, however, been urged, that, as the plaintiff took possession of the goods on Saturday evening by the consent of the debtor, and the property being in his

possession at twelve o'clock Monday morning, the writ in his hands might take effect, as an attachment, at the earliest moment on Monday morning, at which an attachment could lawfully be made, and that the court, in favor of the legality of the officer's proceedings, ought so to intend. If it distinctly appeared, that the debtor, on Saturday night, delivered the property to the officer for the purpose of having it attached on Monday morning, or had delivered it to him as a mere depositary, and the plaintiff had in his hands a writ, for the purpose of attaching it at that time, we are not prepared to say, that the attachment might not take effect at the earliest moment, at which it could lawfully be made, without any farther distinct act on the part of the officer.    An attachment being but the taking possession of property, the general doctrine certainly is, that the delivery of process to an officer, having property already in his hands, operates *per se* as an attachment of it.    But the facts in this case do not appear to assume the complexion of an intended attachment on Monday morning.    The evidence, on the contrary, rather tends to show, that the plaintiff took the possession on Saturday evening, with a view to the immediate operation of the writ upon the property, either as an original attachment, or by virtue of his previous attachment of it.    Upon this view of the evidence, the question arises, whether the plaintiff's attachment can be sustained by referring his acts on Saturday evening to his previous proceedings under the writ,—and we are all agreed, that it may be thus sustained.

It has already been held, that the statute refers to the commencement of the service of process, and that, if the service be begun before sunset on Saturday evening, it may well be completed afterwards.    If the plaintiff in this case had made but a nominal attachment on Thursday, taking a receipt for the property and leaving it in the hands of the debtor, there can be no doubt, that he might have lawfully resumed the possession on Saturday evening after sunset, even without the consent of the debtor.    The officer has returned an attachment of the goods on Thursday; but the evidence shows, that the attachment was, by the agreement of the parties to the process, relinquished on Friday evening.    The same evidence, however, farther tends to show, that the parties subsequently, and before Saturday evening, agreed to abandon their relinquishment of the

property and to reinstate it in the possession of the officer, under his previous attachment. This agreement, we think, the parties were competent to make, so far, at least, as regarded their own rights and liabilities under it.

There appears, indeed, to have been something more than a mere agreement, before Saturday night, for the restoration of the attachment. The possession of the goods, avowedly under the attachment, was delivered by the debtor to the attorney, who had superintended it for the creditor, and as a delivery to the officer, early on Saturday morning; and his possession continued until the evening of the same day, when it was formally delivered to the plaintiff. By receiving the possession from the attorney, the officer recognized and adopted his possession through the day as his own; and we think the plaintiff's possession may properly be considered as having commenced with the possession of the attorney for him. The evidence tends to show, that it was the intention of the parties to the process, as well as the intention of the officer, that the former attachment should be restored, not that an original service of the process should be begun.

It is unnecessary to consider, what might have been the effect of an attachment of the property by another officer, while it was in the possession of the attorney on Saturday, and before the adoption of his possession by the plaintiff. So far as the parties to the process were concerned, it was most consistent with their intentions, that the possession of the attorney should be treated as the possession of the officer; and we do not perceive, that any principle of law would be violated by carrying that intention into effect. It is, indeed, in accordance with well established general principles, that the acts of the agent, when adopted by the principal, become the acts of the principal from the beginning.

We do not intend to say, that it is necessary to connect the possession of the attorney with that of the officer, in order to sustain the attachment. Every reasonable intendment should be made in favor of the legality of the proceedings of a public officer, and we should not be inclined to make his acts void by construction. If, by consent of all the parties to the process, his taking possession on Saturday night was understood and intended to be a resumption of

his previous possession, we should not be inclined, for the purpose of avoiding his proceedings, to hold his possession to have been taken for an illegal purpose,

On the whole, as we think the evidence tended rather to show a continuance of the acts of the officer under his attachment made on Thursday, than an original service of the writ on Saturday evening, we are of opinion, that the county court erred in directing a verdict for the defendant, and that a new trial should be granted.